IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 09-cr-00332-REB-01

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    KRISTEN PARKER,

    Defendant.

---

**RULE 11(c)(1)(A),(B) and (C) PLEA AGREEMENT AND STATEMENT
OF FACTS RELEVANT TO SENTENCING**

---

The United States of America, by and through David M. Gaouette, United States Attorney for the District of Colorado, and Jaime A. Pena, Assistant United States Attorney, and the defendant, Kristen Parker, personally and by counsel, Gregory Graf, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1 and Fed. R. Crim. P. 11(c)(1)(A), (B) and (C).

## I. PLEA AGREEMENT

Defendant Kristen Parker agrees to plead guilty to Counts Eight, Nine, Ten, Twelve, and Fourteen and corresponding Counts Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty-One and Thirty-Three of the Superseding Indictment charging violations of Title 18, United States Code, Section 1365(a), Tampering with a Consumer Product, and Title 18, United States Code, Section 2, Aiding and Abetting, and Obtaining a Controlled Substance by Deception violation of Title 21, United States Code, §§ 843(a)(3) and 846.

The parties, pursuant to Rule 11(c)(1)(C), Fed.R.Crim.P., and subject to the Court's

Court's Exhibit 1

acceptance of the plea, agrees to a sentence of **240 months imprisonment**, to be followed by a Term of Supervised Release of at least three years, and restitution as ordered by the Court.

The defendant agrees to fully and truthfully cooperate with the Government and law enforcement authorities, which cooperation will include debriefings and testifying before a Court, jury, and/or Grand Jury whenever called upon or subpoenaed to do so by the Government. It shall also include participating, as directed, in steps to address victim issues regarding (1) the facts and circumstances surrounding the criminal conduct, (2) necessary blood tests to insure the absence of blood born pathogens including but not limited to HIV or Hepatitis, (3) the disclosure of medical history and tests to the extent it is necessary to inform victims about their potential exposure to pathogens, (4) ceasing to provide medical assistance or care as a health care professional, and (5) the surrender of any license/certification issued by any licensing agency authorizing the defendant to act in any medical capacity.

The defendant agrees that if the Government can show that she intentionally lied or attempted to mislead the Government and/or law enforcement authorities, or if she intentionally does not fulfill the terms of or does not complete her cooperation under this agreement, then any information and testimony which she has given previously or hereafter in connection with this case can be used in any prosecution against her, notwithstanding the provisions set forth in this Plea Agreement.

This, of course, also means that the information and testimony will not be used against the defendant at sentencing pursuant to §1B1.8, if she continues to cooperate truthfully with the Government. Information and testimony relating to involvement in crimes of violence, computer related crimes, or crimes involving minors, if any, are excluded from this agreement. "Crimes of violence," as the term is used here refers to the traditional Common Law meaning of the term.

The Government also agrees to move to dismiss without prejudice the remaining counts of the Superseding Indictment and the original Indictment as to this defendant at the time of sentencing if the plea is accepted by the Court.

Should the defendant meet her obligations as set forth in this agreement, including providing truthful testimony whenever requested by the Government, the Government will agree not to seek and upward departure pursuant to the advisory Sentencing Guidelines. The parties agree, because of the repetitive nature of the offenses herein that the Court can consider all relevant conduct in assessing an appropriate amount of restitution in this case. The parties agree that any term of Supervised Release, if authorized, should include the following special conditions:

(1) The Defendant shall not work in any activities involving the medical profession;

(2) No contact with the victims of the offense, unless and until there is an appropriate order of the Court; or for purpose of related civil litigation, if any; and

(3) The defendant shall participate in medical testing as directed by the probation office, understanding that the results of such testing may be released to victims of her conduct.

## II. ELEMENTS OF THE OFFENSE

The elements of 18 U.S.C. § 1365(a) are as follows:

(1) With reckless disregard for and extreme indifference;

(2) To the risk that another person would be placed in danger of death or bodily injury;

(3) The defendant tampered with a consumer product or the container for such product, or attempted to do so; and

(4) Which consumer product affected interstate or foreign commerce.

The elements of 21 U.S.C. §843(a)(3) are as follows:

 (1)  The defendant knowingly or intentionally;

 (2)  Obtained a controlled substance;

 (3)  By means of deceit or subterfuge.

### III. STATUTORY PENALTIES

The maximum statutory penalty for the violation of each count of Title 18 U.S.C. §1365(a) and Title 18 U.S.C. § 2, Tampering with a Consumer Product and Aiding and Abetting (Counts Eight, Nine, Ten, Twelve and Fourteen) is a term of imprisonment of not more than 10 years imprisonment, not more than $250,000 fine, or both; 3 years supervised release; and a $100 Special Assessment fee. There is no applicable statutory minimum sentence of imprisonment.

The maximum statutory penalty for the violation of each count of Title 21 U.S.C. §843(a)(3), Obtaining a Controlled Substance by Deceit (Counts Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty-One and Thirty-Three) is a term of imprisonment of not more than 4 years imprisonment, not more than $250,000 fine, or both; up to 3 years supervised release; and a $100 Special Assessment fee.

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. A violation of the conditions of supervised release may result in a separate prison sentence.

### IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

1. The parties agree that there is no dispute as to the material elements that establish a factual basis for the offense for conviction. Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts that the parties believe are relevant, pursuant to USSG

§ 1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies those facts known to be in dispute at the time of the plea. USSG § 6B1.4(b).

2. The statement of facts herein does not preclude either party from presenting or arguing, for sentencing purposes, additional facts or factors not included herein that are relevant to the guideline computation, USSG § 1B1.3, or to sentencing in general. USSG § 1B1.4. "[I]n determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." USSG § 6B1.4, comment.

3. The parties agree that the date on which conduct relevant to the offense (USSG § 1B1.3) began is on or about October 2008 and continued until June 2009, and encompasses but is not limited to all the alleged Counts in the Superseding Indictment. The parties agree that the Government's evidence would be as follows:

The Defendant, while employed as a scrub tech at Rose Medical Center ("Rose" herein) between October 2008 and April 2009, and later at Audubon Surgical Center ("Audubon" herein) between May and June 2009, accessed syringes of Fentanyl from operating rooms that were equipped with the Controlled Substance for the pain management and anesthesia of patients during major surgery. Fentanyl is a controlled substance approximately 80 to 100 times stronger than morphine. As a scrub tech, the defendant was a person in a position of trust relative to the hospital and its patients, all of whom had a diminished capacity due to their medical condition. The defendant stole the syringes, injected herself with the contents, and then replaced the syringes on the operating room anesthesia carts to avoid detection. She knew the syringes were set out in anticipation

of surgery. During the process of injecting herself with the Fentanyl, the defendant tainted the syringe that she later put back on the operating room anesthesia carts after filling it with saline to conceal and disguise her conduct. The syringes were tainted with the bloodborn pathogen she carried, Hepatitis C, genotype 1b.

The defendant was advised that she was indicated for Hepatitis C when she started her position at Rose Medical Center in October, 2008. She admitted to representatives of the Colorado Department of Public Health and Environment (CDPHE) that she was previously advised she tested positive for Hepatitis C and that she was advised of such at Rose Medical Center. During a subsequent interview with a Detective with the Denver Police Department, the defendant admitted to having tampered with the fentanyl-filled syringes at Rose 15-20 times between January and April, 2009; she also admitted to having continued that practice at Audobon Surgical Center after she left Rose. She was fired from Rose because in April, 2009, she tested positive for Fentanyl, confirming suspicions she was diverting Fentanyl from the hospital. When she left Rose and sought employment at Audubon, the defendant asked that Rose not be contacted as a reference. Audubon honored her wishes.

As a result of confirmation about the possible outbreak of Hepatitis C, Rose and Audubon contacted all the patients that were exposed to operations during the time the defendant had access to the Fentanyl at the respective facilities. Rose has contacted approximately 4700 patients and Audubon has contacted approximately another 1200 patients. The results of many of the blood tests, which determine whether the patients contracted Hepatitis C, Genotype 1b, are in the process of being completed. To date, at least 35 persons, for whom there is no indication they were Hepatitis C positive prior to their operations at the respective facilities, have been identified as matching the

genotype 1b, the genotype associated with the defendant, or otherwise associated with the defendant. Therefore, each date of surgery when coupled with her statement and the other evidence in this case, identifies a separate act and date of tampering and another victim. Counts Eight, Nine, Ten, Twelve, and Fourteen, and corresponding Counts Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty-One and Thirty-Three of the Superseding Indictment identify five separate instances of tampering with a consumer product and obtaining a controlled substance by deceit or subterfuge. The Counts are associated with victims/individuals who: (1) tested positive for Hepatitis C, genotype 1b, subsequent to surgery at Rose Medical Center; (2) had no previous indication of Hepatitis C prior to surgery at Rose Medical Center; (3) received fentanyl during their surgery; (4) had surgery during a time when Kristen Parker was working at Rose; (5) received fentanyl between January and April 2009, the time period during which Kristen Parker admitted to 15-20 instances of tampering; and (6) tested positive as linked to Kristen Parker by genetic sequencing performed by the Centers for Disease Control (CDC).

Further testing involves genetic sequencing which genetically matches specimens from the victims to the defendant's specimen with an over 97% degree of certainty that the defendant was the source of their Hepatitis. Thus demonstrating that the Hepatitis C contracted by each Hepatitis C, Genotype 1b positive patient matches the Hepatitis C of the defendant. Although not all the genetic sequencing tests have been completed, all 16 patients tested by genetic sequencing to date (September 24, 2009) are genetically linked to the defendant, including victims related to the Counts of conviction herein.

The Fentanyl, also known as Fentanyl Citrate, obtained by the defendant on each of the dates

described in the Counts herein was manufactured outside the State of Colorado and therefore affected interstate commerce.

### V. SENTENCING COMPUTATION

The parties stipulate that sentencing in this case will be determined by application of the 2008 version of the advisory United States Sentencing Guidelines (USSG) in conjunction with the Federal Rules of Criminal Procedure.

Generally, the parties understand that the Court may normally impose any sentence, subject to the mandatory minimum sentence and up to the statutory maximum sentence, regardless of any Guideline range computed, and that the Court is not bound by any position of the parties. USSG § 6B1.4(d). In this case, however, the parties have stipulated to a particular sentence pursuant to 11c(1)C of the Federal Rules of Criminal Procedure, which is subject to the approval of the Court. The parties understand that the Sentencing Guidelines are advisory. The Court is free, pursuant to USSG §§ 6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. USSG § 6B1.4 comment.; USSG § 1B1.4. To the extent the parties disagree about the sentencing factors, the computations below identify the factors that are not in dispute. USSG § 6B1.4(b).

A.   The base guideline provision applicable to this offense is USSG § 2N1.1. Therefore, the base offense level is 25.

B.   The Specific Offense Characteristics involve victims that sustained permanent or life-threatening bodily injury, therefore the base offense level is increase by 4 levels and becomes a level 29. See USSG § 2N1.1(b)(1).

    C    There is no aggravating role pursuant to USSG §3B1.1 because the defendant did not direct other persons in the criminal offense. The offense level remains 29.

    D.    There is a two level adjustment because of the use of a Special Skill or Abuse of a Position of Public or Private Trust pursuant to USSG §3B1.3. The offense level becomes 31.

    E.    There is an adjustment because the defendant knew or should have known that the victims of the offense were vulnerable victims because of their physical or mental condition when the tampered products were administered, resulting in a 2 level increase, pursuant to USSG §3A1.1(b)(1), and that there were a large number of vulnerable victims pursuant to §3A1.1(b)(2) resulting in an additional 2 level increase. The offense level becomes 35.

    F.    If the offenses of conviction involve the "...permanent, life-threatening, or serious bodily injury of more than one victim..." Chapter Three Part D relating to multiple counts is applicable. Pursuant to Chapter 3, §3D1.3, an additional 5 level increase is appropriate because the counts relate to separate instances and victims. Therefore the base offense level becomes 40.

    G.    Pursuant to USSG § 3E1.1(a), defendant has clearly demonstrated acceptance of responsibility as to the tampering allegations. A three-level downward adjustment results in an offense level of 37.

    H.    The parties understand that the defendant's criminal history computation is tentative. The criminal history category (CHC) is determined by the Court. At this stage, it appears that the defendant has a limited criminal history, resulting in a CHC of II.

    I.    The Guideline range resulting from the estimated offense level of 37, and the tentative CHC of II, is 235 to 293 months. However, in order to be as accurate as possible, with the CHC undetermined at this time, the estimated offense level could conceivably result in a range from

210 months (bottom of Category I with a base offense level of 37) to life imprisonment (top of Category VI with a base offense level of 37).

  J. Pursuant to USSG § 5E1.2(c)(3), assuming an offense level of 37, the fine range for this offense is $20,000 to $200,000.00 plus applicable interest and penalties.

  K. Pursuant to 18 U.S.C. § 3583(b)(2), the Court may impose a term of supervised release of up to three years.

## V. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct directly attributable to this defendant is disclosed, the sentencing guidelines and 18 USC 3553 permit the court to take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 9/25/09
Kristen Parker
Defendant

Date: 25 Sept 09
Gregory Graf
Attorney for Defendant

Date: 9/25/09
Jaime A. Pena
Assistant U.S. Attorney

10